IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STANLEY J. FARR,

 Plaintiff,

v.                Case No. 19-4095-SAC-ADM

JACKSON NATIONAL LIFE INSURANCE
COMPANY,

 Defendant,

## MEMORANDUM AND ORDER

This matter comes before the court on Defendant's Motion for Leave to Amend its Answer. (ECF 47.) Defendant Jackson National Life Insurance Company ("Jackson National") seeks leave to plead the affirmative defenses of: (1) statute of limitations; (2) estoppel; (3) waiver; (4) latches; (5) potential preexisting condition;[1] and (6) payment/offset. While Jackson National focuses heavily on the reasons it delayed in obtaining the discovery necessary to amend, it does not explain its delay between the time it obtained the discovery and when it filed its motion. A party does not demonstrate good cause to modify a scheduling order to accommodate an otherwise untimely motion to amend by simply pointing to information learned after that deadline. Rather, the party must also show it acted diligently in moving to amend once it learned of this new information. Jackson National has not done this, and so the court denies its motion as untimely under the scheduling order.

---

[1] Jackson National's proposed defense is that that benefits are not recoverable under the policy inasmuch as the "sickness" manifested itself prior to the policy's effective date. The court summarizes this as a "preexisting condition" for clarity of this order.

**I.     BACKGROUND**

Plaintiff Stanley J. Farr filed suit against his insurer to recover disability benefit payments he contends are owed to him under an insurance policy that Jackson National administers. The policy provides for monthly payments for lost income in the event of an insured's sickness or accident. (ECF No. 1-1 ¶10.) But the payment period differs depending on whether the disability resulted from a sickness or an accident. For a disability resulting from a "sickness," as defined by the policy, benefits terminate when the insured reaches the age of 65, whereas a disability resulting from an "accident" entitles an insured to lifetime policy benefits.

Mr. Farr made his initial claim on the policy after he underwent a partial knee replacement on October 10, 2007. (*Id.* ¶¶ 12-14.) According to Jackson National, the claim was based on "sickness," which Mr. Farr described as arthritis of both knees. (ECF 6 at ¶ 14.) His insurer began issuing monthly benefit payments. However, on November 28, 2007, Mr. Farr underwent a second surgery for a total knee replacement involving his other knee, which he alleges left him permanently disabled and unable to work as a chiropractor. (ECF 1-1 ¶¶ 17-18.) Mr. Farr states that Jackson National was aware of his medical history and should have been aware that the second surgery left him permanently disabled, thus entitling him to lifetime benefits. (*Id.* ¶ 22.) But Jackson National contends it properly terminated benefits in April 2018, when Mr. Farr reached age 65, because he was receiving benefits for a disability resulting from a sickness. After Jackson National terminated his benefits, Mr. Farr submitted a second claim based on the accident provision and pursed his case administratively. When Jackson National continued to deny the claim, Mr. Farr filed this lawsuit asserting breach of contract. Jackson National answered on October 22, 2019, asserting various defenses to Mr. Farr's contract claims. (ECF 6.)

Shortly thereafter, the court entered a scheduling order that established a deadline of January 31, 2020, for motions to amend the pleadings and a May 15 discovery deadline. (ECF 14, at 2.) This more-than-five-month discovery period is lengthier than what the undersigned typically allows in a breach-of-contract case. Nevertheless, the court later granted extensions of certain deadlines largely based on delays the parties encountered as a result of the COIVD-19 pandemic. (ECF 38.) This included extending the discovery deadline from May 15 to August 14, and granting commensurate extensions of other remaining deadlines. But the parties did not request—and the court did not grant—an extension of the deadline to amend the pleadings.

Jackson National deposed Mr. Farr on June 2 and 3. He testified that he understood Jackson National was paying his claim as a sickness under the policy; that by 2011 he thought his disability should have been considered as resulting from an accident as opposed to a sickness but that he did not inform anyone at Jackson National of this until 2018; and that his knee issues manifested themselves "to some degree" prior to the issuance of the policy. On July 1, Mr. Farr produced documents related to his malpractice lawsuit, which showed that he sought lost-income damages. Jackson National argues this testimony and these documents put it on notice of additional potential defenses. On August 12, which was only two days before the discovery deadline, Jackson National moved to amend its answer to assert the affirmative defenses of: (1) statute of limitations; (2) estoppel; (3) waiver; (4) latches; (5) preexisting condition; and (6) payment/offset. That motion is now before the court. The court has since granted a two-week extension of the discovery deadline so the parties could complete limited depositions. (ECF 55.)

## II.     LEGAL STANDARD

A party moving to amend after the scheduling order deadline must demonstrate good cause for modifying the scheduling order. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*,

771 F.3d 1230, 1240 (10th Cir. 2014); FED. R. CIV. P. 16(b)(4) (a scheduling order "may be modified only for good cause and with the judge's consent"). To establish good cause, the moving party must show that it could not have met the motion to amend deadline despite "diligent efforts." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018). In the context of a motion to amend to assert affirmative claims, if a party knows of "the underlying conduct but simply failed to raise [its] claims, . . . the claims are barred." *Gorsuch*, 771 F.3d at 1240; *see also Green v. Blake*, No. 18-2247-CM, 2020 WL 816016, at *2 (D. Kan. Feb. 19, 2020) (applying the same standard on a motion to amend an answer to assert affirmative defenses). On the other hand, "Rule 16's good cause requirement may be satisfied . . . if a [party] learns new information through discovery or if the underlying law has changed." *Id.*

But even when a party learns of new information through discovery, it must still act diligently in moving to amend. *See Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248–49 (10th Cir. 2015) (affirming the district court's finding of no good cause when plaintiff learned of new information after the deadline for amendments but waited months before moving to amend). It is not enough to simply point to new information learned after the deadline for amendments. *Id.* (stating that this situation is the same as knowing of the conduct but failing to timely raise the claims). Rather, the moving party must demonstrate good cause to extend the deadline up to the time it filed its motion to amend. *See Vivint, Inc. v. N. Star Alarm Servs., LLC*, No. 216CV00106JNPEJF, 2018 WL 3215663, at *3 (D. Utah Feb. 5, 2018) ("The moving party must show good cause for failing to move to amend prior to the cutoff date and for the length of time between learning of the new information warranting amendment and moving to amend"), *report and recommendation adopted in part sub nom. Vivint, Inc. v. NorthStar Alarm Servs., LLC*, No. 216CV00106JNPEJF, 2018 WL 1449516 (D. Utah Mar. 23, 2018).

## III.     JACKSON NATIONAL HAS NOT ESTABLISHED GOOD CAUSE

Jackson National has not established good cause.  It offers no explanation why it waited more than two months to move to amend after it had notice of five of the six potential affirmative defenses.  Jackson National contends that it first learned of the information giving rise to most of the proposed affirmative defenses when it deposed Mr. Farr on June 2 and 3.  The only exception is Jackson National's payment/offset defense.  Jackson National contends it was put on notice of this potential defense on July 1, when Mr. Farr produced documents relating to his medical malpractice lawsuit.  But Jackson National did not move to amend until August 12, at the end of the discovery period.  This was more than two months after it deposed Mr. Farr and about a month-and-a-half after it received records regarding Mr. Farr's malpractice lawsuit.

Jackson National states that it received Mr. Farr's deposition transcript on June 16, but it does not explain why it needed the transcript to move to amend.  The deposition testimony itself put Jackson National on notice.  Jackson National's motion quotes from the transcript (but does not attach the transcript as an exhibit), but it could have easily summarized Mr. Farr's relevant testimony without the deposition transcript.  Even if the court were to give Jackson National the benefit of the doubt that it required the transcript, it still waited nearly two months after receiving the transcript to move to amend.  This unexplained delay between learning of the information giving rise to the amendment and the time when Jackson National actually moved to amend does not demonstrate diligence.  *See Husky Ventures*, 911 F. 3d at 1020 (knowing of "new information months before the motion to amend—fatally undercuts [the] ability to demonstrate good cause" (internal quotations omitted).)

Jackson National's attempt to explain its delay in taking Mr. Farr's deposition ignores its delay in moving to amend.  Specifically, Jackson National focuses on the reasons for the delay

5

between the January 31 deadline for amendments to the pleadings and Mr. Farr's early June deposition. But this is not the applicable timeframe when considering whether there is good cause to amend a scheduling order to allow for an otherwise untimely motion to amend because it does not consider date when the party actually moved to amend.

And even this unspecific explanation is not compatible with a finding of diligence. Jackson National argues that it misunderstood the nature of Mr. Farr's claims but that his deposition clarified that he experienced knee problems prior to his surgeries; that he knew Jackson National paid benefits under the sickness provision; and that Mr. Farr believed the benefits should have been paid under the accident provision when his medical malpractice case settled in 2011. Jackson National states that when it answered, it did so with the understanding that Mr. Farr's position was that Jackson National should have known from his medical records that his disability was caused by an accident but that he was unaware that Jackson National paid his claim as a sickness. While the complaint alleges that Jackson National was aware of Mr. Farr's medical history, Mr. Farr does not allege that he personally believed he received payment under the accident provision. (ECF 1-1 ¶ 22.) The complaint did not mislead Jackson National. There might also be a reasonable explanation why Jackson National only recently discovered that Mr. Farr's knee problems potentially predated the policy period or learned of the damages Mr. Farr sought in his medical malpractice case, but Jackson National offers no explanation about why it only recently obtained this information.

While some delay because of mediation and COVID-19 is understandable, discovery in this case opened in late November, but Jackson National contends it did not learn of these facts until more than six months later in June and early July. Jackson National does not explain why this fairly basic information was not or could not be obtained earlier through other discovery

6

methods.  *See Husky Ventures*, 911 F. 3d at 1021 (to demonstrate good cause, the moving party must diligently investigate the facts necessary to bring potential claims) (citing with approval *Cook v. Howard*, 484 F. App'x 805, 818–19 (4th Cir. 2012), which upheld a finding of no good cause because "in considering whether 'good cause' excuses compliance with a scheduling order deadline, the district court must examine whether the movant had been diligent, though unsuccessful, in attempting to acquire the information that would have formed the basis of a timely motion to amend")).  Among other things, Mr. Farr points out that Jackson National had in its possession significant information from the administrative review proceeding that should have enabled it to plead these fairly common defenses from the outset.  (ECF 51, at 6.)

In sum, Jackson National did not act diligently by waiting a month-and-a-half to two months after it learned of the information giving rise to the amendments before it moved to amend at the close of discovery.  Jackson National also has not shown that it acted diligently in obtaining the information on which the proposed defenses are based.  Because the court cannot find good cause to extend the scheduling order deadline, the court denies the motion as untimely. *See Husky Ventures*, 911 F.3d at 1019 (the court can deny a motion to amend for failure to show good cause within the meaning of Rule 16(b)(4)).

**IT IS THEREFORE ORDERED** that Defendant's Motion for Leave to Amend its Answer (ECF 47) is denied as untimely.

**IT IS SO ORDERED.**

Dated August 31, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
